## ESTES *v.* ODOM.

1. In a conveyance of land not sold by the acre but by the tract or entire body, the qualifying words "more or less" will cover any deficiency which does not justify a suspicion of willful deception, or mistake equivalent thereto. This is true whether there was willful deception in fact or not. By accepting such a conveyance the vendee waives not only any mistake, but any deception as to quantity, unless (keeping in view the object of the purchase and all the attendant circumstances) some willful deception or gross mistake would, after ascertaining the true quantity, be suggested to the mind by a mere comparison of that quantity with the quantity named in the descriptive words.

2. The quantity mentioned in the deed being forty acres, more or less, and the complaint being that the actual quantity was seven acres less than forty, and the fraud alleged being that the defend-

ant represented that the tract contained 41¼ acres, it was error to charge the jury thus: " The amount of acres stated in the deed must be the amount of acres that you will say was sold, taking the verbal testimony to throw light upon that, but not to alter it, because when a matter is in writing it cannot be substantially changed by verbal testimony." For this error a new trial is granted.

3. In order for the vendee to estop himself by waiver or acquiescence from seeking redress for the fraud by an action for damages, he would have to be fully informed of the facts at the time of such waiver or acquiescence. If at that time he was aware of a deficiency in the quantity of land but believed it to be much less than it really was, and did not ascertain the true extent of the deficiency till afterwards, he would not be estopped. On the facts in evidence, it was not error to decline to charge the jury that if before he paid the purchase-money, took a conveyance and entered into possession, he complained of a deficiency and the vendor offered to return him his notes and cancel the bargain, and he replied that he was satisfied and would raise no question of deficiency, and the vendor thereupon gave him possession and made him a conveyance, the vendee would be estopped from setting up the deficiency in the land.

4. Previous knowledge of the land or of its boundaries would not preclude the vendee from recovering for fraudulent misrepresentation of quantity, if without fault on his part he was actually deceived and defrauded by the misrepresentation, provided the deficiency was more than could be fairly covered in the given instance by the phrase " more or less."

5. It is no bar to an action for damages resulting from fraudulent misrepresentation of quantity, that the land which the plaintiff got by the conveyance made to him by the defendant was worth more than the price he paid for it. The measure of damages in such a case is not less than the *pro rata* part of the purchase money which was paid for the deficiency, with interest thereon.

April 24, 1893. Argued at the last term.

Before Judge RICHARD H. CLARK. Clayton superior court. March term, 1892.

The petition of Odom alleged: He bought from Estes a tract of land which Estes represented as containing forty-one and a quarter acres. He paid part cash, gave his notes for the balance, and took a bond for titles, in which the land was described as containing forty acres more or less. He paid $27.50 per acre and in all $1,100. After he had paid all the purchase money

except a note for $200, and after the note had been traded to one Kuglar, his attention was called to the fact that the tract only contained thirty-two acres, and he discovered that Estes returned it for taxes as containing only thirty-two acres. Odom then had it measured by a competent surveyor, and for the first time learned that it only contained thirty-three acres. He at once called on Estes to right the wrong and return him the amount or value of the seven acres and to get his note, all of which Estes refused. He was compelled to pay off the note, and he took a deed from Estes in which deed the land is described as containing forty acres more or less. He had confidence in Estes and in good faith relied on his representations, and thought it was at least forty acres, while Estes insisted that it was forty-one and a quarter. The tract did originally contain forty-one and a quarter acres, but Estes had previously sold his brother seven or eight acres, all of which was unknown to Odom until long after said transaction. Estes well knew that the tract contained only thirty-two acres, and, with intent so to do, did by such fraudulent and false representations deceive and defraud him in the sum of $192.50, the value paid for the seven acres, and interest thereon. Since the purchase the land is greatly increased in value, and by said fraudulent conduct of Estes petitioner has been forced to pay out his money, and in not getting the amount of land contracted for he has been injured and damaged $300 ; for the land is now worth $40 or $50 per acre, and Estes, after demand made, refuses to indemnify him for his damages or pay him said sum fraudulently received from him for the land.

There was a verdict for Odom for $99.37½, with interest. Defendant's motion for a new trial was overruled, and he excepted. The motion contains the general grounds, and the following :

1. The court erred in refusing to charge thus: "A description of quantity of land as so many acres, stating number of acres, followed by the words " more or less," will cover a deficiency in quantity, unless the deficiency is so great as to justify the suspicion of willful deception, or mistake amounting to fraud. Therefore it is to a large extent a question of good or bad faith on the part of the seller. If Estes acted in good faith, believed that he really had the quantity of acres specified in the deed, then a deficiency of quantity, however great, would not authorize a suspicion of deception on the part of Estes."

2, 3. The court erred in charging as shown in the second and third head-notes.

4. The court refused to charge: "If Odom knew the land, or if before he bought the lines were pointed out to him and no deception was practiced by Estes upon him in pointing out the lines, then he cannot claim that there was such a mistake as would amount to a fraud; for if the buyer has an opportunity to examine and decide for himself the quantity of land he buys, he could not complain if there be a deficiency in the number of acres." And in no part of the charge were the jury instructed upon the defence, that the lines were pointed out to Odom, that no deception in so doing was practiced upon him, and that he was fully capable of judging of the quantity of acres contained in the body of land which was conveyed to him by defendant.

5. The suit was for deceit and not for breach of contract; and plaintiff's evidence shows that the property he got under the deed was of much more value than the price he paid for it, and he was in no wise defrauded or cheated.

HALL & HAMMOND and W. L. WATTERSON, for plaintiff in error.

STEWART & WRIGHT, *contra.*

BLECKLEY, Chief Justice.

1. The code, §2642, reads thus: "In a sale of lands, if the purchase is *per acre*, a deficiency in the number of acres may be apportioned in the price. If the sale is by the tract or entire body, a deficiency in the quantity sold cannot be apportioned. If the quantity is specified as "more or less," this qualification will cover any deficiency not so gross as to justify the suspicion of willful deception, or mistake amounting to fraud; in this event, the deficiency is apportionable: the purchaser may demand a rescission of the sale or an apportionment of the price according to relative value." Here the sale was by the tract or entire body, and the quantity was specified in the conveyance as forty acres, more or less. According to the evidence of the vendee, the vendor represented the quantity to be forty-one and a quarter acres. Let it be granted that this representation was willfully false and that the tract contained less than forty acres, would it necessarily follow that the vendee could recover for the deficiency, however small or inconsiderable that might be? We think not, for, according to the section of the code just quoted, the qualifying words "more or less" covered any deficiency not so gross as to justify the suspicion of willful deception, or mistake amounting to fraud. By accepting such a conveyance, the vendee waived both mistake and deception, unless fraud either by one or the other would, after ascertaining the true quantity, be suggested to the mind by a comparison of that quantity with the quantity named in the descriptive words of the conveyance. If either direct fraud or a mistake so gross as to be equivalent thereto would be suggested by such a comparison, then a recovery could be had. Otherwise, it could not; for "any deficiency not so gross as to justify the suspicion of willful deception, or mistake amounting to fraud," is covered by the qualification "more or less."

Such a suspicion could not arise or be justified unless some suggestion of fraud or gross mistake would occur to the mind as probable in consequence of the magnitude of the deficiency, in view of the object of the purchase and all the attendant circumstances. Where the vendor qualifies his conveyance with the terms "more or less," the vendee is put upon notice not to rely upon any representation of quantity as being exact. He is put upon notice that the true quantity may, on being ascertained, vary not only from that mentioned in the representation, but from that mentioned in the conveyance, by any difference whatever which is not suggestive of fraud either by deception or by gross mistake. Is it a question of law or a question of fact, whether, in the given instance, there is a suspicion of willful deception or of mistake amounting to fraud? In ordinary cases, we think it is a question of fact to be decided by the jury on all the circumstances of the particular case, including as one of the main considerations the object of the purchase (if any in particular) as understood between the parties at the time of the transaction. Where the quantity was substantially material to the object, the suspicion would arise far more readily than where it was not. For instance, where a purchase of a large tract is made with a view to putting all of the land immediately in cultivation, a deficiency in quantity would count for much more than would the same deficiency in a tract of the same size bought as a building site, or as a business stand for a country store. In the one instance, a somewhat small deficiency might well justify the suspicion, and in the other a much larger deficiency might afford no ground for it whatever. In the one instance there might be good reason for believing that the vendee relied upon a false representation, thinking it to be true; in the other, the jury might well believe that he fully realized the object of his purchase in the

land as it actually was, and that he placed no reliance upon any representation, not caring whether it was true or false. Unless a suspicion of willful deception or of mistake equivalent thereto first arises, without ascertaining the actual fact whether there was or was not such deception or mistake, no final inquiry into the actual fact is in order. Until this preliminary question is decided affirmatively, the additional and ultimate question is immaterial. Though all the evidence bearing on both questions must be submitted at the same time, or in the course of the same trial, the jury should be instructed to deal with the former question first, and not to deal with the latter at all in the event they should determine the former in the negative. We say the preliminary question is for the jury in ordinary cases. In such extraordinary and pronounced cases as would afford no room for difference of opinion, that question could doubtless be decided by the court hypothetically as one of law. The deficiency might be so slight and trivial, on the one hand, or so excessive, on the other, as either to present nothing whatever for trial by the jury beyond ascertaining the extent of the deficiency, or limit their functions to that and to the ultimate question, together with the assessment of damages. We deem the present case, under the facts in evidence, an ordinary, not an extraordinary one, the deficiency being seven acres, and the description in the deed being forty acres, more or less. We cannot say, as matter of law, that the deficiency is so gross as to justify a suspicion of willful deception or of mistake equivalent to fraud; nor can we say, on the other hand, that it is not. For the sake of emphasizing an essential distinction, we repeat that the sufficiency of the words "more or less" to cover a given deficiency, when ascertained, does not depend upon the actual existence or non-existence of fraud, either in the form of mistake or of willful decep-

tion, but solely upon whether the deficiency is such as to justify a suspicion of fraud. When the suspicion is thus justified, then and then only is the actual existence of fraud material. The suspicion may be rebutted, for the suspicion without the fraud will not warrant a recovery; nor will the fraud without the preliminary suspicion. The plaintiff must show a deficiency which is uncovered, and by this means make a *prima facie* case of fraud to the extent of raising a suspicion. The same facts which justify the suspicion may prove the fraud, *prima facie*. The suspicion, however, must be generated in a certain way; it must arise out of a comparison of quantities and out of the magnitude of the resulting deficiency—its magnitude either absolutely, or relatively to the object of the purchase, etc.; whereas, were the question only one of actual fraud, the fact of the fraud might be shown in various ways, none of them involving the magnitude of the deficiency. In raising a suspicion of fraud, what the vendor knew, said or did in negotiating the sale, need not be known. He may have acted in perfectly good faith, but this will not be assumed, and therefore will not protect him from the suspicion which we are discussing; good faith can be shown only to rebut the suspicion after it has arisen, and to negative the actual commission of fraud, notwithstanding the apparently well-founded suspicion thereof.

2. We have examined carefully the charge of the court as brought up in the record. It nowhere submits to the jury the preliminary question of fact above specified, but proceeds upon the theory that if there was willful deception, the vendor would be answerable at all events for the deficiency. In one of the paragraphs excepted to, it says: "The amount of acres stated in the deed must be the amount of acres that you will say was sold, taking the verbal testimony to throw light upon that, but not to alter it, because when a matter is

in writing it cannot be substantially changed by verbal testimony." Under the rule of the code, where the qualifying words "more or less" are used, no number of acres whatever, according to the writing, is sold other than the number contained in the tract, and this number is subject to be ascertained by parol evidence, whatever number may be mentioned in the deed. The instruction just quoted, taken by itself, seems intended to bind both parties by the quantity stated in the deed, but this construction would be inconsistent with other parts of the charge, and is therefore not to be adopted. We cannot be sure of the precise idea which the court meant to express, but we are sure that the jury may have understood the court as meaning that they were to consider forty acres as the quantity sold; and in view of the rest of the charge, we reach the conclusion that the court designed the jury to understand that if the tract contained seven acres less than forty, and if there was a false and fraudulent representation by the vendor that it contained forty-one acres and a quarter, they were to allow damages on account of the deficiency of seven acres. Now such a result would not be correct, as we have already seen, unless the words "more or less" would not cover the deficiency, and whether they would or not depends on whether that deficiency is so gross as to justify a suspicion of willful deception or of mistake amounting to fraud. We think the charge quoted was erroneous, and that a new trial should be had on account of that error.

3. In declining to charge as requested on the subject of estoppel the court did not err, for the reason suggested in the third head-note.

4. Assuming that the deficiency was more than the indefinite words in the deed would fairly cover, previous knowledge by the vendee of the boundaries of the tract would not hinder a recovery for the fraud, if he was

actually deceived by a false representation made willfully by the vendor. Knowledge of boundaries need not involve knowledge of acreage or superficial area, and was not, in itself, notice of what the tract contained.

5. The theory that the vendee must be satisfied if he got in land the worth of his money is altogether wrong. He was entitled to have what he bought and paid for, and if the fraud of the other party deprived him of a part of the same so considerable that the fraud is manifested *prima facie*, or fairly suggested as .probable, by the grossness of the deficiency, the minimum recovery should be the amount paid for the deficiency, with interest thereon from the time of payment. If the true tract, as it proved to be, was, on account of being so small, worth less than it would have been as part of a larger tract which the vendee supposed he was getting, and had a right to expect, this difference would be recoverable, no matter how valuable the true tract was. *Smith* v. *Kirkpatrick*, 79 *Ga.* 410. *Judgment reversed.*